**Philip J. DUFFY, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1997.

Decided Oct. 9, 1997.

Sean T. Welby, Harrisburg, for petitioner.

Joanna N. Reynolds, Assistant Counsel, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Philip J. Duffy (Duffy) appeals from the March 10, 1997 order of the Pennsylvania State Police Commissioner (Commissioner), affirming the order of the Pennsylvania State Police (PSP) denying benefits under the Heart and Lung Act[1] for an injury sustained by Duffy while a cadet at the PSP Academy and its subsequent recurrence after Duffy had been sworn in and employed as a PSP Trooper.

Duffy was a cadet at the PSP Academy training to become a State Police Trooper. His training at the Academy lasted six months during which he lived at the Academy and was paid at cadet wages. On his own time, Duffy decided to practice for the obstacle course but unfortunately, fell over an obstacle and injured his back.[2] Duffy graduated from the Academy and was sworn in as a PSP Trooper on October 7, 1994.

On October 17, 1994, Duffy suffered a recurrence of his back injury, was diagnosed with a herniated disc, and missed one month of work.[3] He subsequently returned to full duty as a PSP Trooper. While he received workers' compensation benefits, the PSP denied Heart and Lung Benefits under Section 637(a) of the Heart and Lung Act (Act), 53 P.S. § 637(a), because it found that Duffy was not a "member" of the PSP at the time of his original injury. Duffy appealed that decision to the Commissioner of the PSP who appointed a hearing examiner.

The hearing examiner found that cadets are "members" of the Pennsylvania "State Police Force" for purposes of the Heart and Lung Act because no legislative mandate exists that excludes cadets from being members of the PSP force. However, he went on to conclude that because Duffy was injured as a result of practicing for the obstacle course on his own time, he was not entitled to Heart and Lung benefits because his injury had not occurred during the "performance of duty" as required by the Heart and Lung Act.[4]

Both Duffy and the PSP filed exceptions to the hearing examiner's proposed order with the Commissioner. Upon an independent review of the record, the Commissioner concluded that at the time of the original injury, Duffy, as a cadet, was not a "member" of the PSP force for purposes of the Heart and Lung Act, making him ineli-

---

1. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638. Section 1 of the Heart and Lung Act provides in part that:

    [a]ny member of the State Police Force ... injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid ... his full rate of salary ... until the disability arising therefrom has ceased.
    53 P.S. § 637(a).

2. Duffy was practicing with other cadets for the obstacle course, successful completion of which was a required part of the Academy training, but he was not engaged in "official" Academy training at the time.

3. Both the PSP and Duffy agree that the October 17, 1994 injury is a recurrence of the injury

which Duffy sustained on August 23, 1994, while a cadet at the Academy.

4. This issue of whether Duffy was injured in the performance of his duties was not raised here by either Duffy or the PSP. We note, however, in *McCommons v. Pennsylvania State Police*, 165 Pa.Cmwlth. 280, 645 A.2d 333, 336 (1994), *petition for allowance of appeal denied*, 539 Pa. 671, 652 A.2d 841 (1994), that we determined just because an officer's activities were "related" to his work does not establish that the "performance of duty" standard of the Heart and Lung Act has been met. And, in *Feineigle v. Pennsylvania State Police*, 680 A.2d 1220 (Pa.Cmwlth. 1996), *petition for allowance of appeal denied*, 546 Pa. 697, 687 A.2d 380 (1997), we held that where a PSP Trooper was injured off-duty while voluntarily practicing with his service weapon, and in anticipation of his mandatory weapons

gible for benefits for any periods of incapacitation which resulted from the injury sustained while a cadet and affirmed the hearing examiner's denial of benefits *albeit* on different grounds. This appeal followed.[5]

Before us, Duffy contends that the Commissioner erred in finding that PSP cadets are not "members" of the PSP force for purposes of determining eligibility for Heart and Lung benefits under the Act.[6] While noting that the PSP's administrative regulations define "members" of the PSP force as only those officers who have already been sworn,[7] Duffy contends that those internal regulations are not controlling as to what is a "member" of the PSP force for purposes of the Heart and Lung Act. Because Section 711(a) of the Administrative Code of 1929 (Administrative Code),[8] 71 P.S. § 251(a), provides that, "the commissioner shall maintain a training school to be known as the Pennsylvania State Police Academy for the proper instruction of members of the State Police Force ...", Duffy argues that the Commissioner cannot automatically infer that the legislature intended cadets not be included as members of the PSP force. Also, he argues that because the intent of the Heart and Lung Act is to provide special benefits to police officers and other employees in rigorous public service, the training of such employees is also rigorous and serves the same public interest that the General Assembly intended. Therefore, Duffy contends that Heart and Lung Act benefits should also be awarded to those injured training to be police officers.

Even though we agree with Duffy that the Administrative Code does not specifically exclude cadets from the force, the Administrative Code consistently treats cadets differently than sworn officers.[9] Auguring against Duffy's contention that they are members of the force is that cadets are not vested with the power to make arrests, enforce the law, or in any other way function as a PSP Trooper until after they have crossed the threshold, upon graduation, of being sworn in as actual PSP officers. Up until they are sworn in as "officers", cadets have no more authority or power to enforce the law than any other civilian, and they remain civilians until they have completed the requirements of the

---

qualification, he was not "injured in the performance of his duties" for purposes of the Act.

5. Our scope of review of a decision of the Pennsylvania State Police Commissioner is limited to a determination of whether constitutional rights were violated, errors of law committed, or whether the necessary findings of fact were supported by substantial evidence. *McCommons v. Pennsylvania State Police, supra.*

6. In the alternative, Duffy contends that even if PSP cadets are not "members", if a PSP Trooper suffers a recurrence of an injury sustained while a cadet at the Academy, he or she should be eligible for benefits under the Act upon that recurrence. However, because the sole issue raised by Duffy below was whether a cadet is a member of the PSP force for purposes of the Heart and Lung Act, this second contention raised now by Duffy was not raised below and cannot be raised for the first time on appeal. *In re Mackey*, 687 A.2d 1186 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, —— Pa. ——, 694 A.2d 623 (1997).

7. Section 2.02 of the PSP Administrative Regulations set forth the following definitions:
   **2.02(G) Employe:** A civilian working full time for the Department.
   **2.02(K) Member:** A sworn Pennsylvania State Police officer.

**2.02(N) Personnel:** Employees and members collectively.

8. Act of April 19, 1929, *as amended*, 71 P.S. §§ 51–732.

9. Section 205 of the Administrative Code provides in part that "[n]o enlisted member of the Pennsylvania State Police shall be dismissed from service or reduced in rank except by action of a court martial board ..." but that "[a]ll new cadets and troopers shall serve a probationary period ... during which time they may be dismissed by the Commissioner for violations of rules and regulations, incompetency, and inefficiency without action of a court martial board or the right of appeal to a civil court."

71 P.S. § 65(a), (b), (e) and (f).
   Section 711 of the Administrative Code provides in part that "[b]efore any enlisted member who has not reached mandatory retirement age is dismissed or refused reenlistment by the commissioner ... such enlisted member will be given an opportunity to be heard either in person or by counsel, or both, before a Court-martial Board appointed by the commissioner ..." but that "[f]or the purposes of this subsection (b), the term '*enlisted member'* shall not include a *cadet*..."
71 P.S. § 251(b)(1), (4). (Emphasis added).

Academy, passed the requisite examinations, and have been sworn in as officers. This lack of ability to enforce the law is embodied in the PSP's Administrative Regulation 2.02(K) that defines a member as a sworn officer. Because the Heart and Lung Act applies only to those performing the police service—members of the police force—not those merely training to perform police work, the decision of the Commissioner is affirmed.

### ORDER

AND NOW, this 9th day of October, 1997, the March 10, 1997 order of the Pennsylvania State Police Commissioner is affirmed.