**Stephen GRIFFIN, Petitioner,**

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 31, 1999.

Decided Aug. 3, 2000.

John L. Heaton, Lebanon, for petitioner.

Robert A. Greevy, Harrisburg, for respondent.

Before SMITH, Judge, FLAHERTY, Judge, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Stephen Griffin (Griffin) petitions for review from the July 6, 1999 order of the Commonwealth of Pennsylvania, Board of Probation and Parole (Board) that adopted the proposed findings of fact and conclusions of law of the hearing examiner recommending that Griffin be found ineligible for benefits under what is commonly referred to as the Heart and Lung Act (Act).[1] In this case, we consider the issue of whether the General Assembly's use of the phrase "in the performance of his duties" in the Act was intended to preclude an individual from receiving benefits where there is a possibility that he suffered a recurrence or aggravation of a prior work-related injury in a non-work related incident. For the reasons that follow, we vacate the Board's order and remand for further proceedings.

By order dated July 19, 1996, Nicholas Muller, Chairman of the Board, appointed a hearing examiner[2] to conduct a hearing

---

1. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638.

2. Mr. Muller appointed Clifford Blaze as the hearing examiner. Mr. Blaze is employed as Chief Counsel to the Unemployment Compensation Board of Review.

on Griffin's claim for heart and lung benefits. The hearing took place on July 22, 1996, at which time both parties agreed to utilize Griffin's testimony before the workers' compensation judge in lieu of live testimony before the hearing examiner.[3] Thereafter, the parties subsequently presented to the hearing examiner the deposition testimony of their expert medical witnesses.[4] Upon considering the evidence presented by the parties, the hearing examiner made the following findings of fact:

1. Claimant was employed by the Pennsylvania Board of Probation and Parole for approximately twenty-six years, most recently as a[P]arole Agent II.

2. Claimant's duties included supervising released prisoners, preparing pre-parole investigations, referring released prisoners to health and substance abuse facilities, attending parole hearings, returning parolees to prison when necessary, etc.

3. Claimant's fixed place of employment was in the State Office Building at the intersection of Broad and Spring Garden Streets in Philadelphia, where he had his own desk, separate office, and dedicated telephone line.

4. Claimant, as were other parole agents, was required to be in the office for at least one full day per week; at other times, he was in the field or in the office based on discussions with his supervisor.

5. It was Claimant's personal practice to work in the office each morning, go into the field to conduct the required work and then "end at home by writing up ... interviews and finishing off what they call a daily activity sheet."

6. Parole agents are rarely allowed to work at home, i.e. in only unique circumstances, and then only with the pre-approval of their supervisors.

7. Claimant did not have general or specific approval from his supervisor to work at home.

8. Claimant asserted that he had the right to work at home on the basis of what he was allegedly told by parole agents from other parts of the state whom he met at periodic Employer-wide training seminars.

9. On August 24, 1995, Claimant was scheduled to work until 5:00 p.m. but, without permission, drove home, arriving at 4:00 p.m., at which time he injured his back.

10. Claimant did not report this injury to his supervisor until the next morning, Friday, August 25, 1995.

11. Claimant did not contact Dr. DeCarlo, from whom he had received significant medical treatment over the years, until the same date, but did not see the doctor until August 29, 1995.

12. Claimant was injured while parking a State owned vehicle, which was, at that time, assigned to him for official business and for driving to and from work.

13. Personal use of the State vehicles was not permitted while used for commuting.

14. There is no evidence of record indicating Claimant had a contractual right to use a State vehicle, and Claimant admitted that, periodically, he did not have the use of a State vehicle.

15. The parole officers worked what are "controlled hours" from 8:30 a.m. to 5:00 p.m., and required specific permission from their supervisor or manager to deviate therefrom. Claimant sought or received no such permission.

16. Dr. DeCarlo first treated Claimant on April 22, 1993, for injuries sustained in a fall on April 27, 1993, at Greaterford

**3.** The record before us does not indicate the outcome of the workers' compensation proceedings.

**4.** In addition to its expert medical testimony, the Board presented the deposition testimony of Ronald Zappan. Mr. Zappan was, at one time, the supervisor to Griffin's immediate supervisor.

[sic] Prison, when he slipped and hit his lower back.[5]

17. Dr. DeCarlo treated Claimant for this injury until October of 1994 when Claimant returned to work. The diagnosis was a disc protrusion at L3–L4, a bulging disc at L4–L5, sclerosis and calcification of the coccyx.

18. In August of 1995, Dr. DeCarlo's diagnosis of Claimant following the incident at issue herein was "acute lumbosacral sprain and aggravation of the previous injury and the possibility of herniation or a ruptured disc."

19. The doctor's treatment for Claimant included regular therapy, ultrasound, hot/moist packs, deep muscle massage, electric stimulation and exercise.

20. By July of 1996, Dr. DeCarlo diagnosed Claimant's injuries as continuing, but retained hope that Claimant could return to work.

21. Dr. DeCarlo's bills for treating Claimant exceeded $15,000.

22. Claimant was examined by Dr. Leatherwood on behalf of the Employer on May 21, 1996. He found that Claimant had no problems with straight leg testing and deep tendon reflexes in knee or ankle, normal motor strength testing, full lumbosacral extension, and subjective tenderness of the lumbosacral spine with no spasm.

23. Dr. Leatherwood's diagnosis was "sprain/strain of the lumbosacral spine," and "degenerative changes in the lumbosacral spine which are consistent with his age." To rule out more serious conditions, the doctor ordered an MRI which confirmed his conclusion that Claimant had sustained a work-related sprain/strain with no permanent injuries.

24. Dr. Leatherwood credibly concluded that Claimant's injury in August of 1995 was a sprain/strain type of injury which did not change, in any way, the underlying degenerative disease of Claimant's spine and that Claimant was fully and completely recovered from that injury so that he could return to full employment without restrictions as of May 21, 1996.

25. Although Dr. Leatherwood credibly testified that injuries such as Claimant's should have healed within six weeks to three months, he could not tell when Claimant had actually recovered before May 21, 1996.

(Findings of Fact Nos. 1–25).

Emphasizing the fact that Griffin was injured while he was returning to his home before 5:00 p.m., the end of his workday, and that he did not have permission to work at home, the hearing examiner concluded that Griffin did not sustain an injury on August 24, 1995 that arose "in the performance of his duties." Accordingly, the hearing examiner recommended that Griffin be found ineligible for benefits under the Act.

By order dated July 6, 1999, the Board adopted the hearing examiner's recommendation in its entirety and found Griffin ineligible for benefits under the Act for periods of incapacitation due to, and following, his August 24, 1995 injury. This petition for review followed.[6]

---

5. In Finding of Fact No. 16, the WCJ inadvertently transposed the date of Griffin's first injury with the date that he first presented himself to Dr. DeCarlo. In his testimony, Dr. DeCarlo testified that he first examined Griffin on April 27, 1993 for injuries sustained on April 22, 1993. (Reproduced Record "R.R." 54a).

6. On review, we are limited to determining whether constitutional rights were violated, an error of law has been committed, or whether the necessary findings of fact are supported by substantial evidence. *Duffy v. Pennsylvania State Police*, 701 A.2d 304 (Pa. Cmwlth.1997). Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *City of Philadelphia v. Workers' Compensation Appeal Board (Cronin)*, 706 A.2d 377 (Pa. Cmwlth.), *appeal denied*, 555 Pa. 734, 725 A.2d 183 (1998).

Section 1(a) of the Act, 53 P.S. § 637(a), provides that:

> [a]ny member of the State Police Force, ... and the parole agents, enforcement officers and investigators of the Pennsylvania Board of Probation and Parole, ... who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased....

The hearing examiner concluded that Griffin did not injure himself during the performance of his duties and that therefore, he was ineligible for benefits. The hearing examiner's findings of fact and conclusions of law do not, however, address Griffin's contention that he suffered a *recurrence* of his 1993 work-related injury on August 24, 1995.

In *Adams v. Lawrence Township Bd. of Supervisors*, 153 Pa.Cmwlth. 418, 621 A.2d 1119 (1993), Wilmont Adams was injured in an automobile accident in the course of his employment as a police officer with the Lawrence Township Police Department and, thereafter, began receiving benefits under the Act. The Township then unilaterally discontinued payments and Adams filed an equity action and a motion for a preliminary injunction with the court of common pleas seeking to require the township to resume payment of benefits.

The township and Adams subsequently entered into a stipulation that provided for the payment of benefits for a period of nearly seven months. Upon the expiration of the benefit period, the agreement provided that benefits would be terminated. The court of common pleas approved the stipulation.

Adams returned to full-time work, but shortly thereafter his condition allegedly recurred and he was unable to work.[7] Consequently, Adams filed a petition to compel payment of benefits, seeking past due and future benefits.

The court of common pleas denied the petition and concluded that Adams had voluntarily agreed to terminate his benefits and that, consequently, he was not entitled to receive benefits. On appeal to this Court, Adams maintained that his benefits were terminated without a due process hearing.

In *Adams*, we agreed with the court of common pleas that Adams's benefits were not improperly terminated because he voluntarily agreed to the stipulation terminating his benefits. We went on to conclude, however, that Adams was entitled to a hearing on the issue of whether his benefits should have been reinstated due to an alleged recurrence of his disability. We stated that "[t]he burden of proof, in this instance, is on Adams as the party seeking to alter the status quo to demonstrate that his disability has in fact recurred and that his disability is temporary." *Id.* at 1121.

Our research has failed to find any case law holding that an individual seeking benefits under the Act for a *recurrence* of a prior work-related injury must establish that the *recurrence* was the result of a second work-related incident. In fact, this Court in *Adams* referenced workers' compensation law in determining the proper burden of proof necessary to establish a recurrence under the Act. *Id.* (citing *York City Sch. Dist. v. Workmen's Compensation Appeal Board (Peyser)*, 136 Pa. Cmwlth. 110, 582 A.2d 423 (1990)).

■ Indeed, under the Workers' Compensation Act,[8] a claimant may be entitled to a reinstatement of benefits where he suffered a non-worked related recurrence of a prior work-related injury. In *Cam-*

---

7. The Court's opinion does not indicate whether Adams's alleged recurrence of his injury occurred while he was at work.

8. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

*bria County Comm'rs v. Workmen's Compensation Appeal Board,* 57 Pa.Cmwlth. 409, 426 A.2d 249 (1981), the claimant suffered a herniated disc while in the course of his employment and thereafter received workers' compensation benefits. After surgery, the claimant returned to work. Subsequently, the claimant stumbled while walking, which did not occur during the course of his employment. The claimant filed a petition to reinstate benefits. On appeal, we affirmed the referee's award reinstating the claimant's benefits on the basis that there was substantial evidence to support a finding that the claimant suffered a recurrence of his work-related injury.

■ "The purpose of the Act is to provide important public safety personnel with *full* compensation while disabled from an injury which occurs in the performance of duty." *Feineigle v. Pennsylvania State Police,* 680 A.2d 1220, 1222 (Pa.Cmwlth. 1996) (quoting *Colyer v. Pennsylvania State Police,* 165 Pa.Cmwlth. 41, 644 A.2d 230, 233 (1994)). Similarly, the Workers' Compensation Act was intended to provide benefits to employees that suffer work-related injuries resulting in a loss of earnings. *U.S. Steel Corp. v. Workmen's Compensation Appeal Board,* 62 Pa.Cmwlth. 502, 437 A.2d 92 (1981).

■ The statutes differ in that the Act is to compensate an injured employee only for temporary disability, whereas the Workers' Compensation Act is to compensate an injured employee for wage-loss as long as he suffers a loss of earning power, whether it is temporary or permanent.[9] In other words, the Act provides compensation only where the disability is temporary and does not apply where the disability is permanent. *Colyer.*

■ Although we recognize that the Act is to be strictly construed, which is

contrary to the liberal construction afforded the Workers' Compensation Act,[10] we cannot conclude that the General Assembly's use of the phrase "in the performance of his duties" was intended to preclude an individual from receiving benefits where he suffers a recurrence or aggravation of a prior work-related injury in a non-work related incident. To hold otherwise would shield the employer from liability where it is established through competent medical testimony that a subsequent injury is the direct result of a prior work-related injury, and would, in effect, be contrary to the purposes of the Act. Thus, we conclude that the hearing examiner erred in determining that Griffin was not entitled to benefits based solely on the hearing examiner's finding that Griffin was not in furtherance of his duties as a parole agent at the time of his injury.

This conclusion, however, is not dispositive of the present matter. In Finding of Fact No. 9, the hearing examiner found that "[o]n August 24, 1995, [Griffin] was scheduled to work until 5:00 p.m. but, without permission, drove home, arriving at 4:00 p.m., at which time he injured his back." (F.F. No. 9) The hearing examiner further noted in Findings of Fact Nos. 18 and 23 that Dr. DeCarlo diagnosed Griffin as suffering from an "acute lumbosacral sprain and aggravation of the previous injury and the possibility of herniation or a ruptured disc" and that Dr. Leatherwood diagnosed Griffin as suffering from a "sprain/strain of the lumbosacral spine and degenerative disc disease." (F.F. Nos. 18 and 23) In addition, the hearing examiner acknowledged that Dr. Leatherwood ordered a MRI, which confirmed Dr. Leatherwood's conclusion that Griffin had sustained a work-related sprain or strain with no permanent injuries. (F.F. No. 23) Dr. Leatherwood was not asked whether Grif-

**9.** *See generally, Kohut v. Workmen's Compensation Appeal Board (Township of Forward),* 153 Pa.Cmwlth. 382, 621 A.2d 1101 (1993); 3 D. Torrey and A. Greenburg, Pennsylvania Workers' Compensation: Law and Practice, § 17:12 (1999).

**10.** *See Allen v. Pennsylvania State Police,* 678 A.2d 436 (Pa.Cmwlth.1996).

fin's August 24, 1995 injury was a new injury or a recurrence or aggravation of the prior 1993 work-related injury.

A reading of the hearing examiner's discussion establishes that he recommended denying benefits solely on the basis that Griffin was not performing his duties as a parole officer at the time that he was injured. The hearing examiner failed to make a finding as to whether Griffin suffered a new injury on August 24, 1995, an aggravation or recurrence of his 1993 injury, or no injury.[11]

Since the status of Griffin's injury has not been determined, i.e. whether it is a new injury or a recurrence or aggravation of a prior work-related injury, a remand is necessary in order to allow the Board to consider evidence relevant to this issue and to determine the appropriate remedy, if any. Accordingly, in view of the foregoing, the Board's order is vacated and this case is remanded for additional evidence on the limited issue of whether Griffin sustained a new injury, a recurrence or an aggravation of his 1993 work-related injury.

### ORDER

AND NOW, this 3rd day of August, 2000, it is hereby ordered that the July 6, 1999 order of the Pennsylvania Board of Probation and Parole is vacated. This case is remanded for additional evidence on the limited issue of whether Griffin sustained a new injury, recurrence or aggravation of his 1993 work-related injury under what is commonly referred to as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638.

Jurisdiction relinquished.

---

11. We would note that the record would not support a finding that Griffin did not sustain an injury on August 24, 1995. Dr. Leatherwood, the Board's expert medical witness, acknowledged that Griffin had sustained an injury but believed that Griffin had completely recovered from the injury prior to his examination of Griffin. Dr. DeCarlo, Griffin's expert witness, testified that Griffin sustained a recurrence of the 1993 work-injury on August 24, 1995.