IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen A. Fee,                             :
                Petitioner        :
                                  :
         v.                 :    No. 554 C.D. 2024
                                  :
Prospect Medical Holdings, Inc.              :    Submitted: May 6, 2025
(Workers' Compensation                       :
Appeal Board),                               :
                Respondent        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge

OPINION
BY JUDGE McCULLOUGH                  FILED: June 30, 2025

        Kathleen A. Fee (Claimant) petitions for review of the April 8, 2024 order of the Workers' Compensation (WC) Appeal Board (Board), reversing the WC Judge's (WCJ) decision granting her claim petition seeking ongoing total disability benefits under the Pennsylvania Workers' Compensation (WC) Act (Act)[1] as a result of an injury she sustained while working for Prospect Medical Holdings, Inc. (Employer) at Crozer Chester Medical Center. Employer terminated Claimant's employment after she had transferred to light-duty work for her refusal to comply with its COVID-19 vaccination policy, despite her requests for religious and medical exemptions. Employer argues that Claimant's termination for cause should act as a bar to an award of WC benefits pursuant to *BJ's Wholesale Club v. Workers' Compensation Appeal*

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

*Board (Pearson)*, 43 A.3d 559 (Pa. Cmwlth. 2012) (citing *Vista International Hotel v. Workers' Compensation Appeal Board (Daniels)*, 742 A.2d 649 (Pa. 1999)). After careful consideration, we reverse the order of the Board.

## Background

The relevant facts and procedural history of this case are as follows. Claimant began working for Employer as a registered nurse in 1990. Claimant is also an ordained minister and practices her Christian faith at Universal Life Church Ministries. On September 26, 2021, while working as an intensive care unit (ICU) staff nurse, Claimant slipped across water that had spilled on the floor of a patient's room, causing her to skid into a cabinet and injure her neck and left shoulder. Claimant completed her shift but was unable to raise her left arm the next morning. Claimant was placed on light-duty work one week later and transferred to the detox unit. Claimant had started orientation training for the detox unit when she was terminated on December 10, 2021, for failure to obtain a COVID-19 shot in violation of Employer's vaccination policy. The policy required employees to provide proof of vaccination as a condition of employment and allowed exemptions for medical and religious reasons, whereby if an employee was exempted she would be required to wear a face mask and comply with COVID-19 testing guidelines. Although Claimant had requested religious and medical exceptions from the vaccination requirement on two separate occasions and submitted supporting documentation, Employer denied her requests.

On February 21, 2022, Claimant filed a claim petition alleging that she sustained an injury to her neck and left shoulder as a result of the September 2021 incident, and she sought total disability benefits from October 10, 2021, and ongoing. On June 1, 2022, Employer filed a termination petition countering that Claimant had

fully recovered from her work injury as of April 22, 2022. On August 29, 2022, Claimant filed a Utilization Review (UR) Petition seeking review of all medical treatment provided by physical therapist Aaron Myers from June 1, 2022, and ongoing.

At her April 1, 2022 deposition, Claimant testified that she was aware of Employer's vaccination policy before she was injured, and that she supported her requests for a medical exemption with a letter from her primary care physician and "also submitted a sincere and heartfelt religious exception." (Reproduced Record (R.R.) at 111a.) Claimant explained that, after her first applications for the exemptions were denied, she asked her union to file a grievance on her behalf, and that request was denied. Claimant then filed for a secondary independent review of Employer's exemption decision, which was also denied. Claimant averred that she decided against obtaining the COVID-19 vaccine because "there wasn't enough information at the time . . . [and] it was a **heartfelt religious and sincere request that I placed, and I put my whole future in God**." (R.R. at 133a.) (emphasis added). Claimant indicated that she reads the bible on a daily basis and elaborated on her decision concerning the vaccination as follows: "I prayed on this. I researched this. . . . the Holy Spirit told me not to get that vaccine . . . I did what God told me to do." (R.R. at 135a.)

Claimant attached a number of documents to her deposition, including an October 2021 email she forwarded to Employer written by a fellow minister at her church attesting to Claimant's faith in God as driving her decision to refuse the vaccine; an October 2021 letter she submitted to Employer describing her relationship with God and her sincere belief that it was against God's will for her to receive the vaccine; and a letter from Claimant's longtime physician in support of a medical exemption outlining her history of autoimmune diseases and strong family history of multiple sclerosis (MS), her fear of taking the vaccine without knowing its impact on her health

3

issues, and recommending that she participate in weekly COVID-19 testing in lieu of vaccination. (R.R. at 153a, 162a, 165a.)

The WCJ held a hearing on November 8, 2022, at which Claimant testified that she continued to undergo treatment for her neck and shoulder pain including physical therapy, taking medication, and receiving epidural injections. Claimant indicated that as a result of her injury she has to rely on other people heavily for assistance with basic activities and her "whole life is basically ruined. [She] used to play tennis all the time. [She] can't do that . . . that was [her] one joy." (R.R. at 73a.) Claimant also indicated that over the course of the 30 years she worked for Employer she was never disciplined for any reason, and that she would return to light-duty work if Employer offered her a position that she was physically able to perform. (R.R. at 76a-77a.) Claimant recounted that she did extensive research on the vaccine and that although some articles stated that it was safe and effective, she came across information indicating that she should not take it because of her medical history. (R.R. at 84a.)

Employer introduced no testimony with respect to the circumstances of Claimant's refusal to take the vaccine and presented medical witness testimony only. By decision circulated June 16, 2023, the WCJ granted Claimant's claim and UR petitions and denied Employer's termination petition. In doing so, the WCJ found in relevant part:

> Having found both Claimant and her medical expert, Eric Bontempo, D.O. to be credible and convincing, this Judge found Claimant has an ongoing disability with restrictions of no lifting, carrying, pushing, pulling or repetitive use of her left arm. Claimant's time of injury employment was an registered nurse. After an initial work injury to her neck in June 2021, Claimant bid on an open and available nursing position in the Employer's detox unit. Claimant acknowledged applying for this position because

4

after reviewing the posted job description, it appeared to be a lighter duty position. At the time of her September injury, she was still working in the ICU. Subsequently, she had only worked a short period of time in the new position when she was placed on administrative leave for failure to obtain a COVID-19 vaccination. At the time of her termination on December 10, 2021, she had been treating with Dr. Mendez and he had placed work restrictions of no overhead lifting or lifting over ten (10) pounds on her. . . . .

Having found Claimant to have been terminated while under work restrictions, the burden is now upon the Employer to demonstrate Claimant's failure to obtain a COVID-19 vaccination amounted to "lack of good faith" which would negate her entitlement to benefits. This Judge found Employer has failed to do such.
. . . .

[Specifically], Claimant was aware of the COVID-19 vaccination policy and the exceptions thereto. Claimant attempted on two separate occasions to request exemptions from the policy based upon her medical conditions of autoimmune disease, including Celiac Disease and Hashimoto's Thyroiditis and a family history of [MS]. Employer denied her exemption request. Claimant also requested an exemption based upon her religious beliefs; the Employer denied that request as well. This Judge does not find the actions taken by Claimant in attempting to obtain a medical and/or religious exemption to Employer's COVID-19 vaccination policy to amount to lack of good faith on the part of Claimant. Further, this Judge does not find Claimant's failure to receive the COVID-19 vaccination to amount to a lack of good faith on the part of Claimant.

(R.R. at 31a-32a.)

Employer appealed to the Board, which reversed the WCJ's decision and order awarding Claimant ongoing total disability benefits. The Board suspended Claimant's benefits as of October 10, 2021, and affirmed the WCJ's decision and order

in all other respects. In explaining its decision to suspend Claimant's benefits, the Board stated:

> Claimant credibly testified that following the work incident, she was placed on work restrictions and began training to be in the detox unit which was a lighter duty job. However, on October 10, 2021, she was placed on unpaid leave and subsequently terminated from [Employer] as of December 10, 2021 because she failed to comply with [Employer's] COVID-19 vaccination policy. Where the employer discharges an employee following a work injury, it bears the burden of proof that suitable work was available or would have been available but for the circumstances which merit allocation of the consequences of the discharge to the claimant, such as the claimant's lack of good faith. Here, the WCJ found that Claimant's failure to comply with [Employer's] COVID-19 vaccination policy did not amount to a lack of good faith. We determine this finding was not supported by the substantial, competent evidence of record.
>
> Claimant testified that she was aware of [Employer's] COVID-19 vaccination policy before sustaining her work injury, and the policy itself was entered into the record. Review of the policy shows that it established all employees must receive a COVID-19 vaccination, and if not, they would be terminated. The only exceptions were if an employee was granted a valid medical or religious exemption. Here, Claimant submitted paperwork to receive both medical and religious exemptions, but was rejected by [Employer]. She further filed a secondary independent review of her exemptions and again was denied, along with having a grievance filed by her union denied. Thus, Claimant clearly had sufficient due process in terms of the vaccination policy and simply was unable to establish she should not be required to abide by the policy. Furthermore, during her testimony, Claimant failed to give any valid reason for her refusal to get vaccinated beyond stating that "there wasn't enough information at the time" regarding the vaccinations.

6

. . . .

>[] Claimant's violation of [Employer's] policy had no relation to her work injury and was based solely on Claimant's own actions, not things beyond her control. [Employer] had a clear policy concerning the requirement of being vaccinated for COVID-19, and Claimant violated the policy by failing to obtain a vaccination after her exemptions were denied multiple times. Claimant also failed to establish any of her alleged exemptions were justified and simply gave a vague argument there was not enough information at the time for her to obtain the vaccine. Thus, the evidence did not support the WCJ's finding that Claimant's actions did not amount to a lack of good faith. Consequently, Claimant is not entitled to any disability benefits, and we must reverse the WCJ's award of disability benefits as of October 10, 2021.

(R.R. at 43a-45a) (citations omitted).[2] This appeal followed.[3]

## **Discussion**

On appeal, Claimant challenges the Board's conclusion that her decision to decline the COVID-19 vaccination constituted bad faith, where she provided documentation to support her requests for medical and religious exemptions and was willing to undergo weekly testing for the virus. Claimant also points to Employer's failure to present any fact witness testimony to explain its position that her actions amounted to a lack of good faith. Claimant additionally maintains that the Board

---

[2] In a footnote, the Board relied on an unemployment compensation (UC) case, *Rivera v. Unemployment Compensation Board of Review*, 310 A.3d 348 (Pa. Cmwlth. 2024), to support its conclusion that Claimant acted in bad faith. (R.R. at 45a.) As will be discussed in detail *infra*, we conclude *Rivera*, which addresses the willful misconduct standard set forth in the UC Law (UC Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-918.10, is inapposite to the instant WC case.

[3] Our standard of review is "limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated." *Wright v. Workers' Compensation Appeal Board (Larpat Muffler, Inc.)*, 871 A.2d 281, 284 (Pa. Cmwlth. 2005).

usurped the WCJ's role as factfinder by re-assessing the evidence concerning her efforts to obtain exemptions and improperly disregarded the WCJ's credibility determinations in reaching its conclusion that she is not entitled to benefits. (Claimant's Br., at 11, 22-24.)

Employer rejoins that Claimant's own testimony establishes that her loss of earnings is not due to her work injury but is instead a result of her voluntary decision not to comply with its mandatory vaccine policy, which she was aware of before she was injured. Employer contends that Claimant's requests for religious and medical exemptions were denied because they were deficient, as she offered only a vague argument that there was not enough information available at the time about the COVID- 19 vaccine in order to take it. Employer also points to the Board's reliance on the UC case *Rivera*, which determined that the claimant's failure to obtain the vaccine amounted to willful misconduct, to argue that Claimant's actions here constituted bad faith. (Employer's Br., at 14, 16, 25, 35.)

"In a claim petition, the claimant has the burden of proving all the elements necessary to support an award, including the existence of a work-related injury resulting in disability and its duration." *Dennis v. Inglis House* (*Workers' Compensation Appeal Board*), 303 A.3d 559, 564 (Pa. Cmwlth. 2023). Once that burden has been met, "if an employer alleges that the claimant's loss of earnings is the result of a post-injury involuntary discharge, the employer bears the burden of proving that suitable work was available or would have been available but for the circumstances which merit allocation of the consequences of the discharge to the claimant, such as the claimant's lack of good faith." *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1077 (Pa. Cmwlth. 2009). "An employer can establish a lack of good faith, or bad faith, when the employer proves that it discharged the

8

claimant for misconduct." *Montano v. Advance Stores Company, Inc.* (*Workers' Compensation Appeal Board*), 278 A.3d 969, 977 (Pa. Cmwlth. 2022). "Whether a claimant acted in bad faith, for purposes of a post-injury discharge, **is a finding of fact for the WCJ**." *Id.* (emphasis added).

Here, the WCJ, after viewing Claimant's comportment and demeanor at the hearing, expressly determined that her loss of employment was not due to bad faith conduct and that she was therefore entitled to receive ongoing total disability benefits for the injury she sustained while working for Employer. Despite the substantial evidence in the record supporting the WCJ's findings, the Board conducted its own independent analysis by reweighing the evidence in the light most favorable to Employer (rather than Claimant, as it was obligated to do), in reaching the opposite conclusion. *See DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 11 (Pa. Cmwlth. 2021) (stating that evidence must be viewed in the light most favorable to the prevailing party).

While the Board characterized the evidence as showing Claimant provided only a vague reason for refusing the vaccine, *i.e.*, that there was not enough information available about it at the time, our review of the record demonstrates that Claimant instead repeatedly and emphatically explained that her religious beliefs informed her decision and she provided a substantiating email from a fellow minister at her church. That email unequivocally explained that Claimant's prayer and reflection on the vaccine led to her decision not to take it. Claimant additionally submitted a letter from her long time physician describing her history of autoimmune diseases and family history of MS as contributing to her resistance to taking the vaccine, as she did not and could not at that time understand its potential impact on her comorbid conditions. We highlight that the WCJ has exclusive authority to act as

9

factfinder to determine the credibility of witnesses and weigh the evidence, and is therefore free to accept or reject the testimony of any witness. *DiLaqua*, 268 A.3d at 11. "On appeal, **neither the Board nor this Court may reweigh the evidence** or the WCJ's credibility determinations, and the WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Id.* at 13 (emphasis added). In performing this substantial evidence analysis, we must view the evidence **in the light most favorable to the prevailing party before the factfinder (here, Claimant)** and draw all reasonable inferences deducible from the evidence in support of the factfinder's decision in favor of the prevailing party. *Id.* Applying these well-settled precepts to the instant case, the record clearly demonstrates that Claimant's stated reasons for not taking the vaccine are far from vague.

To the extent that Employer relies on *Rivera*, 310 A.3d 348, to support its position that Claimant acted in bad faith, we conclude that its reliance is misplaced. *Rivera* involved a UC claimant who was discharged from work for willful misconduct after he refused to comply with his employer's COVID-19 policy, which required its employees to get vaccinated **or self-test for the virus weekly** and submit the results before reporting for work each Monday. Employer provided the test kits or reimbursed employees for the cost of the kits. The Referee and the Board both determined that the claimant was ineligible for UC benefits under the relevant provision of the UC Law because he was discharged for willful misconduct. They found that the employer's directive was reasonable given the nature of the COVID-19 virus, and that periodic testing for the virus was a reasonable accommodation for employees who objected to vaccination on religious grounds. *Id.* at 353. This Court affirmed the Board's decision, concluding the employer's policy was reasonable and the claimant failed to establish good cause for his failure to comply with the policy, and instead offered only **bald**

10

**assertions without any supporting evidence** with respect to his request for religious and constitutional exemptions. *Id.* at 354.

Instantly, Employer's reliance on *Rivera* fails to consider the significant differences between the policies underlying the WC benefits at issue here and the UC benefits discussed in *Rivera*. Specifically, the UC Law was enacted to address the economic insecurity resulting from unemployment, and the statute requires "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own" to meet their basic needs until they obtain new employment. *Chamberlain v. Unemployment Compensation Board of Review*, 114 A.3d 385, 395 (Pa. 2015). In contrast, the Act "was intended to provide benefits to employees that suffer work-related injuries resulting in a loss of earnings," and the thrust of the Act is to make claimants economically whole. *Griffin v. Pennsylvania Board of Probation & Parole*, 756 A.2d 1203, 1208 (Pa. Cmwlth. 2000); *see also Bradford County v. Pasko (Workers' Compensation Appeal Board)*, 323 A.3d 39, 49 (Pa. Cmwlth. 2024). Thus, because the policies underlying the Act and the UC Law differ significantly in their purposes and objectives, the *Rivera* decision is inapposite to the instant case.

Further, *Rivera* is readily factually distinguishable from the instant case because the employer in *Rivera* offered employees the reasonable alternative of weekly COVID-19 testing in lieu of vaccination. Here, no reasonable accommodations were offered to employees, other than through the arduous exemption process. Additionally, the claimant in *Rivera* made only bare allegations in support for his request for exemptions without any supporting evidence, whereas here, Claimant supported her exemption requests with ample supporting documentation.

11

## Conclusion

In sum, we conclude that the Board wholly ignored the strong evidence of record showing that Claimant acted in good faith in pursuing religious and medical exemptions to Employer's vaccination policy, which did not include any reasonable accommodations such as weekly testing for the virus and/or wearing a mask, and that her non-compliance with the policy did not amount to bad faith. Accordingly, we reverse the order of the Board, which concluded that Claimant's loss of earnings was not caused by her injuries but was caused by her bad faith refusal to obtain the COVID-19 vaccine, and reinstate the WCJ's decision.

_____
PATRICIA A. McCULLOUGH, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen A. Fee,                                    :
                Petitioner       :
                               :
          v.                                          :       No. 554 C.D. 2024
                               :
Prospect Medical Holdings, Inc.        :
(Workers' Compensation                   :
Appeal Board),                                     :
               Respondent     :

## *ORDER*

AND NOW, this 30th day of June, 2025, the April 8, 2024 order of the Workers' Compensation Appeal Board, reversing the Workers' Compensation Judge's (WCJ) decision and order granting Petitioner Kathleen A. Fee's claim petition seeking ongoing total disability benefits is hereby REVERSED, and the decision and order of the WCJ is reinstated in its entirety.

 

_____
PATRICIA A. McCULLOUGH, Judge